

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# LONDON

CRIMINAL ACTION NO. 6:26-CR-44-CHB

UNITED STATES OF AMERICA                          PLAINTIFF

V.                        **PLEA AGREEMENT**

BRYCE MAY                                         DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to the single count of the Information, charging a violation of 21 U.S.C. §§ 846 and 841, conspiracy to distribute Schedule II controlled substances, to include oxycodone and hydrocodone. Pursuant to Rule 11(c)(1)(A), the United States will not bring additional charges against the Defendant based upon evidence in its possession at the time of the execution of this Agreement and arising out of the Defendant's conduct within the Eastern District of Kentucky, unless the Defendant breaches this Agreement.

2. The essential elements of the single count of the Information are:

(a) Two or more persons conspired, or agreed, to distribute Schedule II controlled substances;

(b) The defendant knew of the conspiracy and its goals; and

(c) The defendant joined the conspiracy with the intent that at least one of the conspirators engage in conduct that satisfies the elements of distribution of Schedule II controlled substances.

3. As to the single count of the Information, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) The Defendant and Brandy Meadows together owned a medical clinic in Pikeville, KY called "Kentucky Mountain Health" (hereinafter, "KYMH"). KYMH offered pain management services, among other services.

(b) In 2023, KYMH paid Dr. George Morgan to see patients, including for pain management, one week per month. Dr. Morgan held a registration with the Drug Enforcement Administration ("DEA") that authorized him to issue prescriptions, including for Schedule II controlled substances. Dr. Morgan prescribed controlled substances, including oxycodone and hydrocodone, to KYMH patients. Dr. Morgan stopped seeing patients at KYMH in November 2023, and KYMH's payments to Dr. Morgan, made via checks signed by the Defendant, likewise ended in November 2023. Dr. Morgan provided no further services to KYMH patients and in no way was involved in the care of KYMH patients after November 2023.

(c) Following Dr. Morgan's departure from KYMH, the Defendant agreed with Brandy Meadows to continue issuing purported prescriptions for Schedule II controlled substances, including oxycodone and hydrocodone, using Dr. Morgan's name, DEA registration, and password-protected "hard token" used for completing the two-factor authentication required for the issuance of electronic controlled substances prescriptions, and to do so without Dr. Morgan's knowledge or authorization. Both the Defendant and Brandy Meadows issued purported prescriptions for Schedule II controlled substances in the name of Dr. Morgan to KYMH patients, who were paying $200 cash per visit to KYMH. This conduct continued through June 11, 2024, when law enforcement executed a search warrant at KYMH. Both the Defendant and Brandy Meadows knew that neither of them had the authority to issue these Schedule II controlled substances prescriptions in their own name, and they both knew that Dr. Morgan was not aware of or authorizing these purported prescriptions.

(d) The Defendant and Brandy Meadows both understood that, after November 2023, Dr. Morgan was no longer working with KYMH, involved in the care of any KYMH patient, and was not authorizing any further prescriptions to KYMH patients.

(e) March 6, 2024 was one of the dates on which the Defendant used Dr. Morgan's name, DEA registration, and two-factor authentication hard token to

2

provided to the United States all information and evidence the Defendant has concerning the offenses that were part of the same course of conduct or common scheme as the conspiracy charged in the Information.

(e) Pursuant to U.S.S.G. § 4C1.1, decrease the offense level by 2 levels, provided that the United States Probation Office finds that the Defendant receives no criminal history points.

(f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(g) Pursuant to U.S.S.G. § 5E1.1, restitution is $16,783.85, and the victim is the Kentucky Medical Assistance Program.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K, even in the event the Court were to use at sentencing a version of the United States Sentencing Guidelines that pre-dates the removal of departure provisions in Chapter 5, Parts H and K.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9.  The Defendant consents to the imposition of a forfeiture money judgment in the amount of $89,400, which represents the amount of proceeds that the Defendant obtained as a result of the offenses to which he is pleading guilty. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. If the Defendant fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

5

11. The Defendant agrees to pay restitution in an amount not less than $16,783.85 to the Kentucky Medical Assistance Program, pursuant to 18 U.S.C. § 3663(a)(3). The Defendant agrees that this restitution amount permissibly includes restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by Defendant in the factual basis. The Defendant further agrees to be held jointly and severally liable for restitution with any other co-conspirator who contributed to the loss of the victim.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the

6

Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not

limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT UNITED STATES ATTORNEY

Date: 4/1/2026    By: _____
Gregory Rosenberg
Assistant United States Attorney

8

Date: 4-1-26

Bryce May
Defendant

Date: 4-1-26

Jonathan Meltz
Attorney for Defendant